**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ATMANE AMIR,                    :
                               :
    Plaintiff,              :
                               :
v.                             :     CIVIL ACTION NO.
                               :     1:14-CV-03261-RWS
POMAGALSKI,                    :
                               :
    Defendant.              :
                               :
                               :
                               :

## <u>ORDER</u>

This case comes before the Court on Defendant's Motion to Dismiss for *Forum Non Conveniens* [6], Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim [7], Plaintiff's Motion for Oral Argument [15], and Plaintiff's Motion for Leave to File Surreply to Motion to Dismiss for *Forum Non Conveniens* [19]. After reviewing the record, the Court enters the following Order.

## Background

This case arises out of a contract between Plaintiff Atmane Amir, through his unincorporated business called International Engineering, and

Defendant Pomagalski ("POMA").  Under the contract, Plaintiff agreed to act as POMA's commercial agent in Algeria to establish business relationships between Algerian transportation authorities and POMA, and to facilitate the sale of POMA's equipment and services in Algeria.  (Compl., Dkt. [1-1] ¶ 1.) Plaintiff resides in Atlanta, Georgia, but he does business as International Engineering, an unregistered company operating out of Switzerland.  (Id. ¶ 10.) Plaintiff is an engineer and a commercial agent specializing in international business development and consulting.  (Id. ¶ 9.)  POMA is a French company located in Voreppe, France.  (Id. ¶ 6.)  POMA designs, manufactures, and sells cable transport systems, including funiculars, gondola lifts, and chair lifts.  (Id. ¶ 12.)

Plaintiff served as POMA's agent in various territories pursuant to at least seven contracts beginning in 2006.  (Id. ¶¶ 14, 17.)  On May 6, 2009, Plaintiff, doing business as International Engineering, entered into the subject Agency Agreement with POMA to serve as POMA's agent for representation and sales in Algeria.  (Id. ¶ 19.)  Under the Agency Agreement, POMA agreed to pay Plaintiff a 5% commission on equipment and services sold in Algeria. (Id. ¶ 20.)  The parties executed the contract in Grenoble, France, and the

2

contract included a choice of law provision stating that the "Agreement is governed by the law of France," in addition to a forum-selection clause stating that "[a]ny dispute arising from the interpretation or performance of the contract and not settled by amicable settlement will be settled by the courts of Grenoble[,] France."  (Agency Agreement, Dkt. [6-2] at 18.)

Over the next few years, Plaintiff traveled to Algeria thirteen times and paid for his own travel and living expenses totaling approximately $200,000. (Compl., Dkt. [1-1] ¶ 21.)  During those trips, Plaintiff met with the Algerian Ministry of Transport and two Algerian transportation companies.  (Id. ¶ 22.) Plaintiff organized at least 39 meetings between POMA and these companies, and he attended most of the meetings on POMA's behalf.  (Id. ¶ 23.)

Beginning in late 2011, POMA attempted to exclude Plaintiff from communications and a meeting with an Algerian contact.  (Id. ¶ 25.)  POMA then tried to negotiate a lower commission rate under the Agency Agreement. (Id. ¶ 26.)  After Plaintiff refused to accept a lower commission, POMA promised to respect the terms of the Agency Agreement and asked Plaintiff to continue to perform his obligations under the agreement.  (Id. ¶¶ 26-28.) Eventually, on February 7, 2013, POMA stopped communicating with Plaintiff

about the Agency Agreement and referred him to POMA's lawyer.  (Id. ¶ 29.)

Plaintiff alleges that he is entitled to over 5.4 million euros based on six

contracts for the sale of over 100 million euros worth of equipment, but POMA

refuses to pay him.  (Id. ¶¶ 30-33.)

On September 19, 2014, Plaintiff filed this action in the Superior Court

of Fulton County, bringing claims for breach of contract, unjust enrichment,

quantum meruit, promissory estoppel, and fraudulent misrepresentation.

Defendant moves for dismissal based on *forum non conveniens*, lack of

personal jurisdiction, and failure to state a claim for fraudulent

misrepresentation.  To defeat enforcement of the forum-selection clause,

Plaintiff argues that the Agency Agreement was void under French law because

International Engineering is not a registered entity.

## Discussion

Defendant argues that the Court should dismiss this action because

Grenoble, France, is a more appropriate forum in light of the forum-selection

clause and other factors.[1]  Under the doctrine of *forum non conveniens*, a court

---

[1]As an initial matter, the Court will not consider any new arguments raised in
Defendant's Reply brief.  Accordingly, Plaintiff's Motion for Leave to File Surreply
to Motion to Dismiss for *Forum Non Conveniens* [19] is **DENIED as moot**.

4

has discretion to dismiss a case over which it otherwise has jurisdiction for reasons of convenience, fairness, and judicial economy.  See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007).  To obtain dismissal for *forum non conveniens*, "[t]he moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice."  Leon v. Millon Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001).

## I.    Availability and Adequacy of an Alternative Forum

The Court must first examine whether an adequate alternative forum exists.  "Availability and adequacy warrant separate consideration."  Id. at 1311.

A forum is available "when the foreign court can assert jurisdiction over the litigation sought to be transferred."  Id.  "A defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of a *forum non conveniens* analysis."  Bautista v. Cruise Ships

Additionally, the Court **DENIES** Plaintiff's Motion for Oral Argument [15] because it finds the briefing adequate to resolve the motions before it.  See LR 7.1E, NDGa.

5

Catering and Svc. Int'l, 350 F. Supp. 2d 987, 991 (S.D. Fla. 2004); see also

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 ("Ordinarily, this

requirement will be satisfied when the defendant is 'amenable to process' in the

other jurisdiction.").  Here, Defendant stipulates that it is amenable to service

of process in Grenoble, France.  (See Def.'s Br., Dkt. [6-1] at 7.)  Even though

Plaintiff argues that this stipulation does not render all of France an available

forum (in the event the forum-selection clause naming Grenoble is invalid but

the action is dismissed in favor of France anyway), Defendant does note that as

a French company it "is subject to service of process in France and is liable for

judgment in France."  (Jakubowicz Decl., Dkt. [6-3] ¶ 13.)  What is more, to

mitigate Plaintiff's concerns, the Court may condition any dismissal on

Defendant accepting service of process in France.  Therefore, France is an

available forum.

Next, in considering whether a foreign forum is adequate, the Supreme

Court noted in Piper Aircraft that dismissal may be improper "if the remedy

provided by the alternative forum is so clearly inadequate or unsatisfactory that

it is no remedy at all."  454 U.S. at 254.  "[I]t is only in 'rare circumstances'

where 'the remedy offered by the other forum is clearly unsatisfactory,' that the

alternative forum may be regarded as inadequate." Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1290 (11th Cir. 2009) (quoting Satz v. McDonnell Douglas Corp., 244 F.3d 1305, 1311 (11th Cir. 2001)). Indeed, courts have been reluctant to hold that an alternative forum is inadequate. See Leon, 251 F.3d at 1312.

Defendant asserts that France is an adequate forum because it permits recovery for claims of breach of contract and quasi-contract under the French Civil Code.[2] (See Jakubowicz Decl., Dkt. [6-3] ¶ 11.) French law also allows recovery for tort claims, including fraud.[3] (Id. ¶ 12.)

Plaintiff argues, on the other hand, that France is an inadequate forum because under French law the Agency Agreement is void as a result of his failure to register his trade name, and he would be entitled to no recovery. (See Pl.'s Resp., Dkt. [14-1] at 11-12.) Plaintiff concludes that in effect he is left without a remedy under French law. Plaintiff also takes issue with Defendant's expert on French law, arguing that he "cited to broad civil code statutes, but he

---

[2]Specifically Defendant states that the relevant provisions for breach of contract and quasi contract under the French Civil Code are Article 1147 and Articles 1371-72, respectively. (Jakubowicz Decl., Dkt. [6-3] ¶ 11.)

[3]The relevant provision for fraud is Article 1382. (Id. ¶ 12.)

7

completely failed to apply the claims to the case at issue and determine whether
Plaintiff would have a remedy under French law." (Pl.'s Resp., Dkt. [14-1] at
10.) In contrast, Plaintiff's expert, a French professor of law, explains that
under French law, International Engineering—the signatory to the Agency
Agreement—did not legally exist and did not have the capacity to enter into a
contract. (Id. at 11; Treppoz Decl., Dkt. [14-4] ¶ 16.) Consequently, while
Plaintiff does not dispute that the causes of action he asserts exist in France,
Plaintiff says he could not take advantage of a breach of contract or quasi-
contract claim under French law because he failed to incorporate the trade
name "International Engineering." (Id.) Plaintiff also states that he does not
have a viable fraud claim under French law because his original claims stem
from a contract, and so he must proceed on the non-viable contract theory.
(Treppoz Decl., Dkt. [14-4] ¶ 29.)

Defendant disputes that the Agency Agreement is void. (Def.'s Br., Dkt.
[6-1] at 10 n.5.) Defendant submits an affidavit from a French lawyer asserting
that according to Article 1843 of the French Civil Code and Article L.210-6 of
the French Commercial Code, "Persons who have acted on behalf of a firm in
the performance of a contract before registration are liable for the obligations

arising from the acts so performed." (Jakubowicz Decl., Dkt. [6-3] ¶ 23.)

Furthermore, Defendant contends that "an undertaking by an individual using a

trade name is the obligation of the individual." (Def.'s Reply, Dkt. [18] at 5.)

As a result, French law dictates that "as the personal representative of an

allegedly unincorporated business and the signatory of the Agency Agreement,

Plaintiff is bound by the terms of the Agency Agreement." (Jakubowicz Decl.,

Dkt. [6-3] ¶ 24.) Yet Plaintiff argues that these statutes only affect the liability

of Plaintiff, not the liability of Defendant. (See Pl.'s Resp., Dkt. [14-1] at 10.)

The parties therefore present the Court with opposing interpretations of

French law, how the law would apply to the facts of this case, and whether the

result amounts to an adequate remedy. At bottom, Plaintiff argues he has no

remedy because his claims would fail under French law, while Defendant

disputes that conclusion and asserts that the Court need only find that France

recognizes the relevant causes of action and permits litigation on the subject

matter of the dispute.

In Piper Aircraft, the Supreme Court pointed out that under "rare

circumstances," a forum may not be an adequate alternative "where the remedy

offered by the other forum is clearly unsatisfactory." 454 U.S. at 254 n.22.

"Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." Id.  The Court cited Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 78 F.R.D. 445, 456 (Del. 1978), as an example of a case where dismissal was inappropriate when Ecuador, the alternative forum, lacked a generally codified legal remedy for the unjust enrichment and tort claims asserted.  In other words, those claims simply did not exist under Ecuadorian law.  Other cases have found foreign forums (including France) adequate when they permit recovery on the causes of action asserted.  See, e.g., Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1331 (11th Cir. 2011) (finding that Brazil was an adequate forum because plaintiffs "are able to bring similar causes of action and seek adequate remedies in Brazil" related to a plane crash); Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1429 (11th Cir. 1996) (finding that France was an adequate forum because it has a broad statutory basis for tort liability, even though contingency fee arrangements and jury trials on civil claims are not permitted in France); Marnavi Splendor GMBH & Co. KG v. Alstom Power Conversion, Inc., 706 F. Supp. 2d 749, 755 (S.D. Tex. 2010) ("Plaintiff's causes of action of negligence, breach of contract, and breach of warranty exist in France and are commonly pursued in

10

French courts."); <u>Mediterranean Golf, Inc. v. Hirsh</u>, 783 F. Supp. 835, 841 (D.N.J. 1991) ("Nor do Plaintiffs suggest that French law fails to provide an adequate remedy for the claims they assert in the Complaint.  Apparently, French law does permit recovery for claims based in fraud, breach of fiduciary duty and breach of contract.").  These courts did not opine on the merits of the cases under foreign law, however.

While France recognizes causes of action for breach of contract, quasi-contract, and fraud, in order to determine whether Plaintiff would inevitably lose on his claims in France, the Court would have to resolve the parties' dispute over the interpretation of French law and whether French courts would enforce the contract.  This exercise would require the Court to wade into the very issues it is supposed to avoid, for "[t]he doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in comparative law." <u>Piper Aircraft</u>, 454 U.S. at 251.  That is why the Supreme Court has explained "that dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." <u>Id.</u> at 250.  To avoid these practical problems, the Court finds that the case law on *forum non conveniens*

11

does not require the Court to find that Plaintiff must necessarily recover under French law.  Rather, because both parties agree that France recognizes these types of claims, and because Plaintiff has not cited, and the Court cannot find, any case holding that France is an inadequate forum for these causes of action, France is an adequate forum.

## II.    Private and Public-Interest Factors

The next step of the inquiry is to balance private and public-interest factors.  As an initial matter, Defendant contends that the forum-selection clause in the Agency Agreement controls.  In <u>Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas</u>, the Supreme Court explained that an enforceable forum-selection clause carries significant weight in the *forum non conveniens* analysis:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . .
>
> As a consequence, a district court may consider arguments about public-interest factors only.  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

134 S. Ct. 568, 582 (2013).[4]

Furthermore, while a U.S. plaintiff's choice of his or her home forum typically carries with it "a strong presumption that the plaintiff has chosen a sufficiently convenient forum," Leon, 251 F.3d at 1314, "the plaintiff's choice of forum merits no weight" when the plaintiff has agreed to a valid forum-selection agreement, Atl. Marine, 134 S. Ct. at 581.  Before the Court proceeds with the *forum non conveniens* analysis, it must decide whether the parties agreed to a valid forum-selection clause in the first place.

### A.    Forum-Selection Clause

As discussed above, Plaintiff asserts that the forum-selection and choice-of-law clauses are unenforceable because the entire Agency Agreement is void under French law.   For the purposes of this analysis, though, federal law applies.  See Atl. Marine, 134 S. Ct. at 583 n.8 (holding that federal courts apply the same standards in evaluating forum-selection clauses pointing to either state or foreign forums); Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22,

---

[4]Although the Supreme Court decided Atlantic Marine in the context of a transfer motion under 28 U.S.C. § 1404(a), the Court noted that "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums."  134 S. Ct. at 583 n.8.

32 (1988) (holding that federal rather than state law governs a federal court's decision to enforce a forum-selection clause in a diversity case).

Forum-selection clauses are presumptively valid and enforceable. See, e.g., M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). "Only under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a forum-selection clause. Atl. Marine, 134 S. Ct. at 581. As the Supreme Court has explained, a forum-selection clause "represents the parties' agreement as to the most proper forum." Stewart Org., 487 U.S. at 31. To defeat enforcement of a forum-selection clause, a plaintiff must make "a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009). In that regard, such clauses are unreasonable when:

> (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen [forum] would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy.

Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1296 (11th Cir. 1998).

14

Plaintiff rests his argument on his contention that the contract and its forum-selection clause are void under French law.  (See Pl.'s Resp., Dkt. [14-1] at 14-15.)  But because federal law applies, the Court cannot find that the forum-selection clause is invalid on that basis.  Plaintiff has also not made the requisite "strong showing" that France is a fundamentally unfair or inconvenient forum, as the Court explained above.  Even if litigating in France is more costly for Plaintiff, such financial difficulties alone cannot justify refusing to enforce a forum-selection clause.  See P&S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807-08 (11th Cir. 2003) (collecting cases).  Nor has Plaintiff put forth evidence that the Agency Agreement "was not freely and fairly negotiated by experienced business professionals."  Id. at 808.  On the contrary, Plaintiff is an engineer and international business consultant who has done business worldwide and has apparently entered into numerous contracts with Defendant.  (See Compl., Dkt. [1-1] ¶¶ 9, 16-18.)  In short, Plaintiff fails to show that the agreement was entered into as a result of fraud or overreaching, that France is a fundamentally unfair forum, or that enforcing the agreement would contravene a strong public policy.  Therefore, the forum-selection clause is valid and enforceable.

15

Because the Court finds that a valid forum-selection clause controls, Plaintiff's choice of forum is given no deference, and the Court is required to find that the private-interest factors favor France.[5]  See GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1029 (11th Cir. 2014) ("A binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum.").

B.    Public-Interest Factors

The next step is to weigh the public-interest factors.  Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  Piper Aircraft, 454 U.S. at 241 n.6 (internal quotation marks omitted).

---

[5]The private factors include: "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Defendant asserts that this case warrants dismissal because (1) the Court would have to apply French law pursuant to the choice-of-law clause; (2) France has a stronger interest in hearing the dispute; and (3) administrative burdens weigh in favor of dismissal.

"[T]he need to apply foreign law points towards dismissal." Piper Aircraft, 454 U.S. at 259.  Still, "this factor cannot be accorded dispositive weight." SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1105 (11th Cir. 2004).  Under the valid choice-of-law clause, the Court would be required to apply French law.  It is more sensible for French courts to apply and interpret their own law, especially when this Court would have to rely on the parties for French legal principles—a subject about which there is little agreement to date.  See AmerMed Corp. v. Disetronic Holding AG, 6 F. Supp. 2d 1371, 1376 (N.D. Ga. 1998) ("[D]espite the extensive affidavits from experts on Swiss law, this Court is left with diametrically opposed information regarding how Swiss courts would interpret and enforce the forum selection and choice of law clauses as well as whether Swiss courts would enforce against the Swiss defendants any judgment that this Court might render on the merits of the claims asserted here.  This inability of the parties to

17

agree even on the governing law as to these issues, much less on how that law should be interpreted and applied, does not bode well for future litigation in this forum, in which the Court will be dependent upon the parties for information as to the applicable Swiss law.").  As a result, this factor weighs in favor of dismissal.

Defendant next argues that France has a far stronger interest in hearing this dispute.  Plaintiff responds that this Court has a strong interest in protecting its residents, especially when a majority of the work was performed in Georgia.  (See Pl.'s Resp., Dkt. [14-1] at 18.)  Plaintiff asserts that a French court would have little interest in this case because it revolves around the rights and interests of an American citizen.  (Id.)  But France undeniably has an interest in this dispute, too, because it is based on a contract with a French company, executed in France, in which Plaintiff agreed to secure significant business for Defendant in Algeria.  To the extent this factor weighs in favor of litigation in this Court, the effect on the scales is slight.

Defendant also asserts that the administrative burdens favor dismissal because the Court's docket is congested; the Court would be forced to oversee a discovery process involving French-speaking witnesses and French

18

documents located in France, Algeria, and Switzerland; and a jury would have to hear a case spoken almost entirely in French through interpreters while likely applying French law.  The Court agrees that these factors would place an administrative burden on this Court.  Even though Plaintiff notes that much of his evidence is located on his computer here in Georgia, there no doubt will be evidence and witnesses located in France, Algeria, or Switzerland.  And while this case would not present a jury with a dispute wholly unrelated to Georgia, much of the relevant conduct took place abroad.  On balance, the administrative burdens tilt in favor of dismissal.

After considering the public-interest factors, the Court finds that they weigh in favor of France as a forum.  In short, Plaintiff has not succeeded in showing "extraordinary circumstances unrelated to the convenience of the parties" that justify denying Defendant's motion when a valid forum-selection clause requires litigation in French courts.  See Atl. Marine, 134 S. Ct. at 581. Consequently, because both the private and public-interest factors weigh in favor of litigating this case in French courts, the Court finds that this case should be dismissed for *forum non conveniens*.

C. <u>Plaintiff's Ability to Reinstate His Suit Without Undue</u>

<u>Inconvenience or Prejudice</u>

For the last factor, the Court must ensure that a plaintiff can reinstate his suit without undue inconvenience or prejudice.  As previously noted, Defendant has agreed to accept service in France as a stipulation of dismissal, so Plaintiff would have the ability to reinstate his suit in France.  <u>See</u> <u>Barilotti v. Island Hotel Co.</u>, No. 13-23672-CIV, 2014 WL 1803374, at *10 (S.D. Fla. May 6, 2014) (finding that defendant's waiver of defenses related to statutes of limitation, venue, or jurisdiction ensured that plaintiffs could reinstate their suit without prejudice).  The Court will also require Defendant to waive any statute of limitations defenses it may have under French law.

Plaintiff again contends that he cannot reinstate his suit without undue prejudice because a French court would not enforce his contract.  For the reasons stated above, the Court is unpersuaded by this argument because the parties agree that France recognizes Plaintiff's causes of action, even if Plaintiff believes he will lose on the merits.  Defendant disputes this, and so these matters of French law are more appropriately decided in French courts. Given the conditions that Defendant will accept service in France and waive statute of limitations defenses, the Court finds that Plaintiff will be able to

20

reinstate his suit without undue inconvenience or prejudice.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss for *Forum Non Conveniens* [6] is **GRANTED** conditioned upon Defendant's acceptance of service of process in France and waiver of statute of limitations defenses.

In addition, Plaintiff's Motion for Oral Argument [15] is **DENIED**, and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim [7] and Plaintiff's Motion for Leave to File Surreply to Motion to Dismiss for *Forum Non Conveniens* [19] are **DENIED as moot**.

**SO ORDERED**, this 25th day of June, 2015.

_____
**RICHARD W. STORY**
United States District Judge

21